IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRYAN MYGRANT et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 18-0264-WS-M |
| | ) | |
| **GULF COAST RESTAURANT GROUP,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This FLSA action is before the Court on the parties' joint motion to approve settlement. (Doc. 52). The issues raised by the motion are substantially more complex than those in most such motions coming before the Court.

The two named plaintiffs filed a collective action complaint in June 2018. (Doc. 1). The plaintiffs were employed in Mobile, Alabama between March 2015 and May 2017, in the positions of server and "food expo." (*Id*. at 2-3).[1] The complaint asserts that the defendants, who own and/or operate a chain of restaurants along the Gulf Coast, have committed the following FLSA violations: (1) requiring servers to absorb business expenses (such as uniform costs, tools of the trade, non-paying customers ("walk offs") and erroneous orders), bringing their hourly wage below the minimum wage; (2) requiring servers to study and pass periodic menu tests without any compensation for the time involved; (3) claiming a tip credit for all hours worked by servers, even though servers commonly work over 20% of their hours doing mandatory non-tipped work; (4) requiring servers to "tip out," via a tip pool, to non-tipped employees (bartenders, food expeditors, food runners and bussers); and (5) requiring servers to work shifts as non-

---

[1] The latter term is undefined, either in the complaint or, to the Court's knowledge, in any online federal opinion, although other online sources indicate the position is similar to, or synonymous with, a food expeditor.

tipped food expo and claiming a tip credit for all such hours. (*Id*. at 6-12). The complaint alleges the defendants' violations were willful so as to trigger a three-year limitations period, to June 2015. (*Id*. at 13). It seeks recovery of all unpaid wages and all improperly skimmed tips, along with liquidated damages and attorney's fees and costs. (*Id*. at 12-13).

The named plaintiffs seek to maintain a collective action in which similarly situated past and present employees may participate. The complaint identifies such persons as those who worked as servers at any of the defendants' locations since June 6, 2015, along with other employees within these geographical and temporal parameters who were required to absorb the defendants' business expenses or as to whom the defendants claimed a tip credit. (Doc. 1 at 13-15).

In November 2018, the parties reported their belief that mediation could be beneficial and sought the first of several postponements of their discovery and related litigation obligations in order to explore settlement. (Docs. 32, 34, 36, 38, 40). Following two mediations and the informal exchange of information and documents, the parties reached a settlement. (Doc. 49). The instant motion represents their effort to secure judicial approval of that settlement as required by *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) and *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) (extending *Lynn's* to former employees).

"An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). The FLSA thus allows the maintenance of a collective action, and notice to potential class members, if the represented employees are "similarly situated" to the named plaintiffs. *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).[2]

---

[2] Section 216(b) applies to actions under the Age Discrimination in Employment Act ("ADEA"), and cases (such as *Hipp*) construing Section 216(b) in the ADEA context apply

The parties' settlement agreement contemplates relief to a broad spectrum of past and present employees, yet their motion does not request establishment of a collective action. Nor have the parties made any showing that conditional certification is appropriate under the test established in *Hipp*.[3] They appear instead to assume that an FLSA action can be settled collectively without satisfying the ordinary requirements for conditional certification.[4]

In the class action context, a court cannot certify a settlement class unless all the Rule 23 requirements for certification (save only the absence of intractable trial management problems – since a settlement presumes no trial) are satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997). It is not immediately apparent that collective actions are subject to a different rule, and *Hipp* expressly holds that the text of the FLSA requires named plaintiffs to "demonstrate" they are similarly situated to other employees in order to maintain a collective action, 252 F.3d at 1217, with no obvious exception for settlements.

The parties rely heavily on this Court's decision in *Warren v. Cook Sales, Inc.*, 2017 WL 325829 (S.D. Ala. 2017). The Court therein did issue a certification "for

---

equally to cases brought under the FLSA. *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007).

[3] "At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." 252 F.3d at 1218 (internal quotes omitted). "At the initial stage, "[t]he plaintiffs bear the burden of demonstrating a reasonable basis for their claim of class-wide discrimination." *Grayson v. K Mart*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotes omitted). "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id*. (internal quotes omitted). "[T]he district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (internal quotes omitted).

[4] The defendants insist that their agreement to settle "will not be considered an admission or concession that collective action treatment would have been appropriate in this action for any purpose other than settlement." (Doc. 53-1 at 4).

3

settlement purposes," *id.* at 2, but it did not ignore the requirements of *Hipp* simply because the parties proposed to settle the case. Instead, the Court addressed *Hipp* and other cases and identified evidence submitted by the plaintiffs relevant to the certification determination. *Warren v. Cook Sales, Inc.*, 2016 WL 4498459 at *2-3 (S.D. Ala. 2016).

As noted, the complaint seeks certification only as to servers and as to other employees required to absorb the defendants' business expenses or as to whom the defendants claimed a tip credit. (Doc. 1 at 13-15). The parties now seek to extend the benefits of the settlement to all bartenders, servers, food expeditors, food runners and bussers. (Doc. 53-1 at 3). Since the complaint alleges these employees are not tipped, (Doc. 1 at 7), it is not clear that the defendants would have claimed a tip credit as to them;[5] nor is it clear that they would have absorbed any of the defendants' business expenses. Evidence of the sort identified in *Hipp* and other cases for showing that non-server employees are similarly situated to the named plaintiffs has not been provided the Court.[6]

In short, the parties: have not moved for conditional certification; have not made a threshold showing sufficient to obtain conditional certification; and have not demonstrated that the mere fact they desire to settle this action excuses them from doing so. The Court has and expresses no opinion whether the parties can make such a showing or demonstration, but until and unless they do so, their proposed settlement cannot be approved.

Nor is it clear that certification is the only impediment to approval. The parties assume their settlement can be approved before notice is issued and potential opt-in plaintiffs are given the opportunity both to do so and to object to the proposed resolution

---

[5] The complaint does allege that the defendants claimed a tip credit as to the "food expo position," but it is unclear whether that is the same position as "food expeditor" used in the preceding paragraph of the complaint. (Doc. 1 at 7). If it is not, then it is unclear why the proposed settlement does not run in favor of those in the food expo position.

[6] While the complaint alleges that the defendants subject servers and other employees to the same practices at all locations (as is necessary to extend the scope of any certification past the Mobile location), no evidence has been submitted to support the assertion.

of the lawsuit. They identify no authority for this procedure, which runs counter to that employed in *Warren*, 2017 WL 325829 at *2, where the Court considered the absence of objection from potential opt-in plaintiffs – who received notice of the terms of the proposed settlement – significant in gauging the settlement's fairness. *Id*. at *6, *8, *9.

Although it is premature to resolve the motion to approve settlement, the Court questions certain provisions because they affect the size of the universe of potential opt-in plaintiffs who would receive notice prior to approval of the settlement. First, the complaint alleges the violations were willful and invokes the consequent three-year look-back period, to June 2015, (Doc. 1 at 13, 15); the proposed settlement abandons willfulness and establishes a two-year look-back period, to June 2016. (Doc. 53-1 at 3). Second, while the complaint sets no ending date of the relevant period, the proposed settlement provides no recovery for violations occurring after June 2018. (Doc. 53-1 at 3). The parties may be able to satisfactorily explain the discrepancy, but they have not yet done so.

On the assumption the parties will resolve the issues noted above, the Court provides the following non-exhaustive list of potential concerns with the terms of the proposed settlement, which the parties should be prepared to address. Again, the Court does not suggest the parties cannot adequately respond to these concerns, but they have yet to do so.

First, the settlement provides for each named and opt-in plaintiff to receive a flat $2.50 for each "compensable hour worked" during the relevant period, (Doc. 53-1 at 6), which sounds evenhanded so long as the only violations concern wrongfully claiming a tip credit but which could lead to incongruities if an opt-in plaintiff's only claim is for, say, having to buy a uniform shirt that dropped one workweek's wages below the minimum wage. Equities matter. *See Warren*, 2017 WL 325829 at *6 ("[T]he settlement appears equitable in its treatment of different classes of plaintiffs …."). The concern is not that non-tipped employees could be overcompensated (it is not the Court's role to protect the interests of the defendant) but that the defendant's agreement to generous payments to non-tipped employees could have exerted downward pressure on the

payments to be made to tipped employees, who clearly bore the brunt of the defendant's alleged FLSA violations.

Second, the proposed settlement appears to envision releases extending beyond the FLSA claims resolved by the lawsuit, both by reaching state and local wage and compensation claims and by covering FLSA claims for time periods following the June 2018 closing date of the settlement. (Doc. 53-1 at 14). This breadth potentially implicates the concerns addressed by the Court in *Crabtree v. Volkert, Inc.*, 2013 WL 593500 at *5-6 (S.D. Ala. 2013).

Third, the expense of the settlement administrator – which is not quantified or estimated – is to be borne equally by the parties, with the named and opt-in plaintiffs collectively responsible for half of those expenses. (Doc. 53-1 at 5). It is not clear how the plaintiffs will pay those expenses or whether or to what extent such payment may decrease their award. Nor is it clear why the plaintiffs' portion of this expense should not be treated as an expense initially borne by counsel and reimbursed by the defendants, as with other expenses. (Doc. 53 at 8).

Fourth, the agreement calls for all attorney's fees to be paid to counsel within a week after the defendants fund the settlement account, which is two weeks before the settlement administrator must distribute checks to the opt-in plaintiffs and months before their deadline expires to object to the settlement administrator's calculation of their payment. (Doc. 53-1 at 10-11). It is unclear why counsel should receive the entirety of a substantial fee award – proposed at north of $400,000 – before his advocacy obligations to his clients have been fulfilled.

For reasons set forth above, the parties are **ordered** to file, on or before **September 6, 2019**, such supplemental motion, briefing and/or evidence as they deem sufficient to justify conditional certification and to establish the appropriate parameters thereof. Their motion to approve settlement remains pending in the interim.

DONE and ORDERED this 23rd day of August, 2019.

s/ WILLIAM H. STEELE<br>UNITED STATES DISTRICT JUDGE