IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRYAN MYGRANT et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 18-0264-WS-M |
| | ) | |
| GULF COAST RESTAURANT GROUP, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This FLSA action is before the Court on the parties' joint motion to approve settlement.  (Doc. 52).  The Court ordered the parties to supplement their motion to address certain concerns raised by the Court, (Doc. 55), and the parties have done so. (Doc. 56).

## I.  Conditional Certification.

The Court first pointed out that, although the parties' settlement extends beyond the named plaintiffs, they have not moved for certification of a collective action.  (Doc. 55 at 3).  While the parties still have not done so, it is clear from their briefing that they desire conditional certification.  (Doc. 56 at 7).  The Court therefore construes their supplemental memorandum as including a motion for conditional certification of the settlement class pursuant to *Hipp v. Liberty National Life Insurance Co*., 252 F.3d 1208, 1217-19 (11th Cir. 2001).

The Court next doubted that the parties had met the standard for conditional certification, particularly in that the named plaintiffs, who are tipped employees complaining of tip violations, purport to represent both tipped and non-tipped employees. (Doc. 55 at 3-4).  The parties have now clarified that the defendants took a tip credit

uniformly as to all employees included within the complaint and the proposed collective action, including those the plaintiffs say are not tipped employees, and that the tip credit is improper due to the defendants' uniform practice of sharing tips with the same group of non-tipped employees.  With this understanding, the Court finds that all members of the proposed collective action are similarly situated to the named plaintiffs and that the requirements for conditional certification under governing law are satisfied. Accordingly, the parties' deemed motion for conditional certification of a collective action is **granted**.  The following class is conditionally certified:

> All current and former non-exempt employees of Defendants who worked as bartenders, servers, food expediters, food runners, and/or bussers between June 30, 2016 and June 30, 2018 at any of the following Half Shell Oyster House locations:  Flowood, Hard Rock, Destin, Mobile, Hattiesburg, Biloxi, Gulfport, Spanish Fort and Lafayette.

(Doc. 53-1 at 3; Doc. 56 at 12).


## II.  Final Approval of Settlement.

The Court next questioned whether settlement could be approved prior to:  (1) the sending of notice to potential opt-in plaintiffs; (2) the expiration of the post-notice deadline for opting into the collective action; and (3) an opportunity for the opt-in plaintiffs to object to the terms of the proposed settlement.  (Doc. 55 at 4-5).  While the parties presently seek final approval of their settlement, the cases on which they rely stand only for the proposition that preliminary approval is appropriate at the pre-notice stage.  The Court considers this an appropriate procedural sequence.

A number of sister courts have rejected efforts to obtain final settlement approval prior to the sending of notice.[1]  Their primary objections are that final approval would

---

[1] *See, e.g.,* cases cited *infra* nn. 6-7.

moot the lawsuit (precluding the sending of notice)[2] and that a plaintiff cannot settle claims of a non-party.[3]

The Court perceives an additional impediment to final approval of the settlement at this stage.  The Court's responsibility is to "determin[e] that a settlement proposed by an employer and employees" is "a fair and reasonable resolution" of a bona fide FLSA dispute.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  There are two named plaintiffs in this action, but there are clearly many hundreds of potential opt-in plaintiffs,[4] and their perception of what is fair and reasonable may well differ from that of the named plaintiffs.  It would be premature for the Court to definitively decide the fairness and reasonableness of the proposed settlement when well over 99% of the potential claimants have had no opportunity to identify unfair or unreasonable aspects of the settlement proposal.[5]

The parties insist that only they should have any say in the settlement.  Unlike in the Rule 23 context, where class members can be bound to a settlement against their will, those within the scope of a collective action can remain outside the litigation with no

---

[2] *See Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240 (11th Cir. 2003) (discussing mootness created by an FLSA named plaintiff's settlement of his claim).

[3] *See Stein v. Buccaneers Limited Partnership*, 773 F.3d 698, 708 (11th Cir. 2014) ("In an FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case.").

[4] The number of persons that worked as a server, bartender, food expeditor, food runner or busser at any of nine large restaurants for even a single day of a two-year period – a time frame encompassing over 700,000 work hours, (Doc. 53 at 2 n.2) – likely exceeds a thousand.

[5] *See, e.g., Prim v. Ensign United States Drilling, Inc.*, 2018 WL 3729515 at *2 (D. Colo. 2018 ("Moreover, plaintiff's failure to provide putative class members with notice and an opportunity to opt in to the lawsuit before seeking final approval of the parties' proposed settlement undermines the Court's ability to evaluate … the fairness of the settlement agreement …."); *Warren v. Cook Sales, Inc.*, 2017 WL 325829 at *6 (S.D. Ala. 2017) (identifying the absence of objection from opt-in plaintiffs as a relevant consideration in evaluating the fairness and reasonableness of an FLSA settlement).

adverse consequences; thus, they say, employees that believe the settlement is not fair and reasonable can simply elect not to participate.  (Doc. 56 at 20-21).

The question, however, is not whether the class of potential opt-in plaintiffs will be harmed by the settlement but whether they will be benefited, and benefited in a way that is fair and reasonable under the circumstances.  Their voice, if they have one, should be heard before that determination is definitively made.  Were settlement reached and approval sought only after expiration of the opt-in period, counsel might be in a position to represent, in compliance with Rule 11, that his clients deem the settlement fair and reasonable; because settlement of this case was reached prior to notice, no such representation is possible, and the input of opt-in plaintiffs must be obtained by different means.

For all the foregoing reasons, the Court declines to consider final approval of the proposed settlement at this time.

## III.  Preliminary Approval of Settlement.

While some courts have refused to consider even preliminary approval of an FLSA settlement agreement prior to notice,[6] others (including this Court) have permitted preliminary approval, with only final approval delayed until notice and an opportunity to opt in and object to the settlement terms.[7]  The Court considers preliminary approval responsive to the concerns regarding mootness and authority without unnecessarily discouraging the very settlements that federal courts are expected to promote.

Because approval is only preliminary, the case is not settled, and the named plaintiffs' claims remain live.  Because the case will settle, if at all, only after final

---

[6] *E.g., Parra v. Quality Controlled Concrete, LLC*, 2015 WL 12750445 at *3 (M.D.N.C. 2015); *Leigh v. Bottling Group, LLC*, 2011 WL 1231161 at *4 (D. Md. 2011).

[7] *E.g., Christeson v. Amazon.com.ksdc, LLC*, 2019 WL 354956 at *4-5 (D. Kan. 2019); *Prim*, 2018 WL 3729515 at *2; *Warren v. Cook Sales, Inc*., 2016 WL 4498459 at *4 (S.D. Ala. 2016); *Copeland-Stewart v. New York Life Insurance Co*., 2016 WL 231237 at *4 (M.D. Fla. 2016).

approval, and because by that time the opt-in process will be complete, the named plaintiffs will not exceed their authority by settling on behalf of non-parties.

"[W]e allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's*, 679 F.2d at 1354.  In many cases, delaying preliminary approval of a proposed settlement would discourage settlement, in derogation of this policy; unable to obtain any early indication of favorable judicial disposition towards a settlement proposal, many defendants would divert to litigation issues – such as contests over conditional certification, discovery and the merits – resources that could have funded a settlement, thereby shrinking the pot if not scotching settlement entirely.  The availability of preliminary approval encourages parties to vigorously explore settlement while retaining for future opt-in plaintiffs a genuine opportunity to challenge the fairness and reasonableness of a settlement they had no hand in crafting.

The Court therefore considers whether to preliminarily approve the parties' proposed settlement.  The Court previously identified a number of questions regarding the proposed settlement and has received generally satisfactory responses.

### 1. Settlement amount.

The complaint asserts several FLSA claims, all relating to minimum wage (not overtime), with the most sweeping being that the defendants improperly took a tip credit every workweek as to every class member.  The settlement formula focuses on this claim, providing a flat $2.50 to each opt-in plaintiff for each work hour recorded or paid by the defendants.  The other four claims asserted in the complaint are narrower in scope, extending only to particular workweeks.  Because the FLSA protects only payment of the applicable minimum wage, which cannot be recovered twice under different theories, these four claims are largely redundant with the tip credit claim.  All five asserted claims appear to be problematic for the plaintiffs, factually and legally.  The $2.50 per hour recovery represents about 25% of what most class members could recover if, despite

these problems, they were completely successful on their primary, tip credit claim.[8] Based on the parties' presentation, the settlement amount appears to be fair and reasonable.

### 2. Service awards.

In addition to the formula payments identified above, the two named plaintiffs are to receive service awards. There is no indication that these service awards are made at the expense of the class members, and they appear to be reasonable within the context of this litigation.

### 3. Attorney's fees and costs.

Counsel is to receive over $425,000 in attorney's fees, plus almost $20,000 in expenses. The parties say this fee is reasonable because, if every single class member opts in, the total payout would exceed $1.7 million. It is not clear that the reasonableness of an FLSA fee award can be assessed based on the highly unrealistic prediction of a 100% opt in rate,[9] but the Court need not concern itself with the reasonableness of the fee award because the parties' filings establish that the fee was negotiated, through a mediator, only after agreement was reached on class recovery, such that the fee award exerted no downward pressure on the class award. *See, e.g., Thomas v. Port II Seafood &*

---

[8] The federal minimum wage is $7.25. The tipped employee minimum wage in Alabama, Mississippi and Louisiana is $2.13, leaving a gap of $5.12. Were these class members completely successful on this claim, they could recover $10.24 per work hour ($5.12 per hour wages and $5.12 per hour liquidated damages).

The tipped employee minimum wage in Florida, where the Destin store is located, ranged from $5.03 to $5.23 during the relevant period, leaving a gap of $2.02 to $2.22. Were these class members completely successful, they could recover $4.04 to $4.44 per work hour.

[9] It has been estimated that "[t]he opt-in rate in a FLSA collection action not backed by a union is generally between 15 and 30 percent." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 445 (W.D. Pa. 2007); *accord McCormick v. Festiva Development Group*, LLC, 2010 WL 582218 at *5 (D. Me. 2010). Other studies place the average at the low end of this range. *Driscoll v. George Washington University*, 55 F. Supp. 3d 106, 112 n.2 (D.D.C. 2014); *Brewer v. BP P.L.C.*, 2012 WL 13042626 at *10 (E.D. La. 2012).

*Oyster Bar, Inc*., 2016 WL 5662032 at *4 (S.D. Ala. 2016) (where the parties "negotiated the attorney's fee portion of the settlement only after coming to an agreement on backpay and liquidated damages figures," the Court "has no reason to believe that the fee portion of the settlement has been at the expense of statutory compensation owed to plaintiffs," such that "the concerns animating judicial review of the attorney's fee portion of FLSA settlements are not implicated here"); *accord Williams v. Omainsky*, 2017 WL 390272 at *6 (S.D. Ala. 2017).

The settlement agreement calls for all attorney's fees to be paid to counsel within a week after the defendants fund the settlement account, which is two weeks before the settlement administrator must distribute checks to the opt-in plaintiffs and months before their deadline expires to object to the settlement administrator's calculation of their payment. (Doc. 53-1 at 10-11). Counsel is required to assist opt-in plaintiffs in resolving disputes over their compensable work hours, (*id*. at 11-12), and the Court questioned why counsel should receive the entirety of the fee award before his advocacy obligations to his clients have been fulfilled. (Doc. 55 at 6).

The parties respond that counsel will of course continue to perform his professional obligations with integrity after he is fully paid. (Doc. 56 at 17). No doubt he will do so, but the opt-in plaintiffs are entitled to more concrete assurance that he will zealously protect their interests. The parties graciously consent to modify their agreement regarding the timing of payment of attorney's fees so as to eliminate the Court's concerns, (Doc. 56 at 18), and the Court concludes that such modification is appropriate. Accordingly, the parties are directed to alter the payment provisions so that $75,000 in fees is held by the administrator until all timely objections to individual settlement amounts are finally resolved and the cashing period and any extensions thereof have expired.

### 4. Releases.

The settlement agreement provides that every opt-in plaintiff releases "all known and unknown wage and compensation claims … including but not limited to those arising

under local, state or federal law."  The named plaintiffs release "all known and unknown claims relating to their employment" with the defendants.  (Doc. 53-1 at 14).  The Court asked the parties to address whether these releases implicate the concerns addressed by the Court in *Crabtree v. Volkert, Inc*., 2013 WL 593500 (S.D. Ala. 2013).

A "pervasive release" releases "all claims and causes of action [an employee] had or may have had against [the defendants], not just the FLSA claims."  *Crabtree*, 2013 WL 593500 at *5.  To minimize the risk an employee surrenders a valuable cause of action to obtain only what he is owed under the FLSA, the Court requires a demonstration that "the employee has a full understanding of what he is releasing in exchange for a settlement award."  *Id*. at *6 (internal quotes omitted).  The Court in *Crabtree* permitted such a release upon a showing that the plaintiffs received "the full benefit of legal advice from their eminently qualified counsel" and "were fully advised in the premises" regarding the release.  *Id*.  Likewise, in *Luker v. Wilcox Hospital Board*, 2014 WL 3518386 (S.D. Ala. 2014), a pervasive release was deemed permissible because the plaintiff agreed to it "upon the advice of her qualified counsel, with full knowledge of the risks involved."  *Id*. at *5.

The parties deny that the contemplated releases are pervasive.  (Doc. 56 at 13). The named plaintiffs' releases plainly are pervasive, since they extend to all claims relating to their employment.  The opt-in plaintiffs' releases are less broad, but they are problematic under *Crabtree* because they extend beyond "just the FLSA claims" (the only claims brought in this action) to other wage and compensation claims under local, state or federal law.  The parties do not suggest that there are no such claims (indeed, they do not even identify the universe of potentially applicable laws at the various governmental levels of the four states implicated in this litigation).  Given that there may be over a thousand opt-in plaintiffs and that counsel presently represents none of them, it is difficult to imagine that he is able to confirm under Rule 11 that none of them has any such claim or that he has fully advised this mass of humanity regarding potential claims they may be surrendering by accepting a settlement check.

The parties insist that it is always permissible to require a release of all wage and compensation claims as part of an FLSA settlement. (Doc. 56 at 14-15). In two of the three cases on which they rely, state wage claims were pleaded in the complaint, so a release of those claims was of course permissible. The third allowed release of unpleaded state wage and compensation claims that "aris[e] out of the identical factual predicate as the settled conduct,"[10] but the parties have not shown that all such claims the opt-in plaintiffs may be releasing arise out of the identical factual predicate as their FLSA claims. Even if such were the case, under *Crabtree* the release of these non-FLSA claims – which may have value beyond that of the FLSA claims – must be supported by proof of an informed decision assisted by advice of counsel.

For these reasons,[11] the Court cannot preliminarily approve the settlement with the release provision intact. The parties will be given one final opportunity to establish that the named plaintiffs satisfy *Crabtree* and to demonstrate that any release executed by any opt-in plaintiff will satisfy its informed-decision/advice-of-counsel requirement, failing which settlement will be approved only absent the release provision.

### 5. Settlement administrator.

The parties request appointment of Rust Consulting, Inc. as settlement administrator. (Doc. 52 at 2). For the reasons stated, the request, construed as a motion for such relief, is **granted**. Rust Consulting, Inc. is **appointed** as settlement administrator.[12]

---

[10] *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *3 (E.D.N.Y. 2017).

[11] The Court also questioned the temporal scope of the required releases, which appeared to extend to FLSA claims existing after the June 30, 2018 termination of the settlement period. (Doc. 55 at 6). The parties have confirmed that the release does not extend past that date, (Doc. 56 at 11), a clarification that must appear in the settlement agreement and in any forthcoming releases.

[12] The parties have clarified that the expense of the settlement administrator will not diminish any class member's recovery below the stated $2.50 per work hour. (Doc. 56 at 15-16).

### 6. Settlement procedure.

The protocol envisioned by the settlement agreement must be slightly revised in light of the Court's refusal to finally approve settlement prior to the issuance of notice, receipt of opt-in notices and opportunity to object. The general time frame and sequence of events is appropriate. However, the notice presents settlement as a *fait accompli* and does not provide for the filing of objections. (Docs. 53-2). The parties are therefore directed to revise the notice to include the substance (not necessarily the style) of those provisions of the *Warren* notice that are missing from their proposed notice.[13] The parties are also to revise the protocol so as to provide the Court a copy of each objection submitted by an opt-in plaintiff within seven days of the close of the opt-in period. The parties are directed to make any other changes to the settlement agreement that may be necessary to bring it in line with the rulings of the Court herein.

## IV. Further Proceedings.

The Court is confident the parties will comply with this order and present a settlement the Court can preliminarily approve. On that assumption, the Court addresses certain aspects of the anticipated culmination of this motion.

### A. Final Certification.

*Hipp* envisions eventual reconsideration of the conditional certification decision. 252 F3d at 11218-19. The standard at this second stage "is less lenient than at the first, as is the plaintiffs' burden in meeting the standard." *Anderson v. Cagle's, Inc.*, 488 F.3d

---

[13] Civil Action No. 15-0603-WS-M, Doc. 51-3. This includes the provision for objections to the settlement to be made in writing to the settlement administrator by the opt-in deadline. (*Id*. at 5.) For reasons explained in Section IV.B, the notice should not include any provision for a final fairness hearing. (*Id*.). The date of the Court's decision regarding final approval, (*id*. at 3), may be stated as "after the deadline for filing objections and consent-to-join forms."

945, 953 (11th Cir. 2007) (internal quotes omitted).  Although this review "is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete," *id*. (internal quotes omitted), a substantial number of sister courts have concluded that such review is mandatory even in the settlement context, even when there has been no discovery, and even when the defendant does not challenge certification.[14]

The Court is unpersuaded that such review is necessary as a prelude to final settlement approval.  The cases reviewed by the Court offer no explanation why final certification should be required in the settlement context but simply cite earlier cases stating the same conclusion, which cases likewise omit analysis in favor of citation to still earlier cases, seemingly *ad infinitum*.  The only appellate decision cited in these cases is *Anderson*, but without explanation how it resolves the issue.

The trial court in *Anderson* conditionally certified a collective action but later granted the defendants' post-discovery motion to decertify.  Following decertification, one defendant settled with the only three named plaintiffs.  488 F.3d at 950.  The Eleventh Circuit rejected the settling defendant's argument that the settlement mooted the named plaintiffs' appeal, but it affirmed the decision to decertify.  *Id*. at 951-54.  While the facts of *Anderson* include both a final (de)certification determination and a settlement (of post-decertification individual claims), the decision says nothing discernible regarding the necessity of final certification as a predicate to collective action settlement.

Nor does the Court perceive any compelling reason for such a requirement.  First, the initial, conditional certification decision assures the existence of a sound basis for a collective action.  Second, the option to seek decertification is a right granted a defendant for its own protection and, like most such rights, it may be waived by the defendant for such reasons as seem good to it.  Third, decertification presumes the completion of

---

[14] *E.g., Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 656 (S.D. Ala. 2013); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010); *McFeeters v. Brand Plumbing, Inc.*, 2017 WL 6451104 at *2 (D. Kan. 2017); *Ruddell v. Manfre*, 2015 WL 7252947 at *1 (M.D. Fla. 2015).

discovery, while settlement often (as here) presumes the absence of formal discovery. Fourth, to the extent that the settlement of an overly expansive collective action disadvantages persons not similarly situated to the named plaintiffs, it can be rejected as not fair and reasonable in its treatment of them. Fifth, a requirement of final certification as a prerequisite to approval of a collective action settlement would introduce one more layer of labor and uncertainty and thus work to discourage settlements, contrary to established policy.[15]

The only potential justification the Court discerns for requiring final certification prior to settlement approval is one of authority. If the FLSA or binding precedent commands such a result, the Court is of course powerless to do otherwise. As noted, however, there appears to be no such directive. And though it be conceded that an FLSA suit can be settled as a collective action only if it has been certified as such, conditional certification is certification, and that certification continues until and unless withdrawn. *Hipp*, 252 F.3d at 1218 (following conditional certification, "[t]he action proceeds as a representative action throughout discovery.") (internal quotes omitted). Conditional certification therefore suffices to support final settlement approval.

To say that final certification is not required is not to say that it is forbidden. There will undoubtedly be cases where the "fit" thought to exist at the conditional certification phase will have disappeared by the time of final settlement approval. The trial court may, for example, become aware of a "wide variety of work assignments and varied compensation structures affecting the purported class" that renders the named plaintiffs unable to "fairly and adequately represent the variously assigned employees." *Anderson*, 488 F.3d at 952 (internal quotes omitted). It is plain that no such disconnect

---

[15] The defendants insist they would move for decertification were the case not to settle. (Doc. 53 at 14). Though the showing before the Court on conditional certification makes success on such a motion problematic, the defendants' perceived need to prepare for such an eventual motion through discovery and otherwise would increase litigation costs and drive a wedge between the parties and settlement.

exists in this case, where all members were subjected to a tip credit allegedly rendered improper by a uniform employer practice.

For these reasons, the Court agrees with those sister courts concluding that final certification is not required prior to approving an FLSA collective action settlement.[16]

### B. Fairness Hearing.

Class actions can be settled only with judicial approval following a proper hearing. Fed. R. Civ. P. 23(e)(2). Perhaps in part because many FLSA collective actions also include Rule 23 class actions advancing other claims, courts often hold a fairness hearing before approving FLSA settlements even absent an accompanying class action. This Court did just that in *Warren* after the parties requested such a hearing. 2016 WL 4498459 at *4. Such a hearing, however, is not mandated by the FLSA. *E.g., Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253 at *10 (S.D. Ala. 2013).

The Court will determine whether to hold a fairness hearing only after the opt-in period (which coincides with the objection period) has closed. The parties are to provide the Court a copy of all objections received, and plaintiffs' counsel shall report to the Court whether any such objections remain outstanding. Absent sufficiently serious objection from one or more opt-in plaintiffs, unresolved after communication with plaintiffs' counsel, the need for a fairness hearing appears remote.

## V. Conclusion.

Except as granted herein, the joint motion to approve settlement remains pending. The parties are **ordered** to address the attorney's fee and release issues, and to submit a revised settlement agreement, notice and consent to join form, on or before **October 7, 2019**.

---

[16] *E.g., In re: Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014); *Tompkins v. Farmers Insurance Exchange*, 2017 WL 4284114 at *8 n.2 (E.D. Pa. 2017).

DONE and ORDERED this 23rd day of September, 2019.

s/WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE