UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRYAN MYGRANT and
JONATHAN WEBBER, on behalf of
themselves and all other similarly-situated
employees,

    Plaintiff,

v.

                              CASE NO.: 1:18-cv-00264-WS-MU

GULF COAST RESTAURANT GROUP,
INC., HALF SHELL OYSTER HOUSE,
INC. and ROBERT TAYLOR d/b/a HALF
SHELL OYSTER HOUSE,

    Defendants.
_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Bryan Mygrant and Jonathan Webber ("Named Plaintiffs"), on behalf of themselves and all similarly-situated individuals who timely consent to join this Lawsuit as described herein ("Opt-in Plaintiffs")(collectively "Plaintiffs"), on the one side, and Defendants, Gulf Coast Restaurant Group, Inc., Half Shell Oyster House, Inc., and Robert Taylor d/b/a Half Shell Oyster House (collectively, "Defendants" or "Gulf Coast"). The Parties agree as follow:

1. **RECITALS**

    1.1.    On June 6, 2018, Named Plaintiffs, on behalf of themselves and similarly-situated employees, filed a collective action Complaint under 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA") in the United District Court for the Southern District of Alabama assigned the case number 1:18-cv-00264("the Lawsuit"). [Doc. 1].

1.2. Defendants have denied and continue to deny any liability to Plaintiffs on the basis of any claim, asserted or unasserted, in the Lawsuit.

1.3. Since the filing of the Lawsuit, the Parties have engaged in substantial communications and negotiations about the claims and defenses at issue, including participating in two full-day mediations with a private mediator and continued consultation with the mediator after such mediations. Plaintiffs are represented by counsel experienced in complex FLSA collective action litigation. The Parties have conducted independent investigation of the facts and law during this litigation. While formal discovery has been stayed, the Parties have requested, exchanged, reviewed and analyzed relevant information, documents and data. The Parties have also analyzed and exchanged applicable law, the Court's rulings and respective damages models and scenarios. Throughout the process the Parties have engaged in good faith arm's length settlement negotiations.

1.4. Given the factual and legal disputes across all allegations, the proposed settlement provides a fair and reasoned compromise of *bona fide* FLSA dispute; it affords class-wide relief to a broad collective without prioritizing a single theory or particular subset of the collective. The settlement was negotiated over months and with the assistance of a third-party private mediator, thereby eliminating any risk of fraud or collusion. The settlement further eliminates the inherent risks and expense both Parties would incur if this litigation were to continue through resolution on the merits. Finally, although both Parties remain confident that they could succeed on the merits, there is no guarantee as to the outcome for either, and this settlement allows the Parties to avoid a complex and lengthy trial with an uncertain outcome. This is particularly true with the scope of the settlement collective. Even if this case is conditionally certified as a collective at the first stage of the proceedings, Plaintiffs face the risk that the collective will later be decertified so that some

members of the putative collective will not have the opportunity to recover damages. The settlement, here, affords the collective class-wide recovery and allows every member of the Proposed Settlement Collective the opportunity to opt-into and benefit from the settlement.

1.5. This Agreement constitutes the Parties' good faith settlement of claims as to which there is a *bona fide* dispute regarding potential liability and damages based upon Plaintiffs' assertion of claims under the Fair Labor Standards Act.

1.6. Without admitting or conceding any liability or responsibility for damages, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, inconvenience, and uncertainty of continuing litigation.

1.7. The Named Plaintiffs have also approved the settlement.

**2. COMPROMISE ACKNOWLEDGMENT**

2.1. This settlement covers the Named Plaintiffs and the "Proposed Settlement Collective" of current and former non-exempt employees of Defendants who worked as bartenders, servers, food expediters, food runners, and/or bussers between June 30, 2016 and June 30, 2018 at any of the following Half Shell Oyster House locations: Flowood, Hard Rock, Destin, Mobile, Hattiesburg, Biloxi, Gulfport, Spanish Fort, and Lafayette.

2.2. Plaintiffs aver that this Agreement is entered into solely on the basis of a compromise of disputed claims, and is not an admission by Defendants of liability. Nor is it, nor will it be construed as, an admission of any fact, including any violation of federal, state, local, or common law, statute, ordinance, directive, regulation, or order. Final approval of this settlement by the Court and the completion of all payments required hereunder shall result in the dismissal with prejudice of the Proposed Settlement Collective claims, against all Defendants, in the above-captioned action.

2.3     Plaintiffs believe that the claims asserted have merit but recognize the expense and length of continued litigation through trial and possible appeals. Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, as well as the delays inherent in such litigation and the likelihood of protracted appellate review. Plaintiffs believe that the settlement reached confers substantial benefits and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interest of the Plaintiffs.

2.4.    Defendants believe that the claims asserted by the Plaintiffs are without merit. Defendants have vigorously contested the claims, but believe that further litigation would likely be protracted and expensive and the outcome would be uncertain. Substantial amount of time, energy, and other resources have been spent, and absent settlement, will continue to be committed to the defense of the claims asserted in this litigation. In light of these realities, Defendants believe that settlement is the best way to resolve the dispute among the Parties while minimizing further expenditures.

2.5.    The settlement shall not be considered a concession or admission by Defendants of any violation of federal, state, or local law, statue, regulation, rule or order, or any obligation or duty at law or in equity, and it shall not be used or referred to in any proceedings other than to interpret or enforce this Agreement. Defendants' agreement to resolve the claims of all Plaintiffs will not be considered an admission or concession that collective action treatment would have been appropriate in this action for any purpose other than settlement, or that collective action treatment would be appropriate in any other action.

2.6.    After consultation with the Named Plaintiffs, their counsel have independently determined that the settlement represents a *bona fide* compromise of their claims.

2.7. The Parties will seek judicial final approval of their compromise and resolution of the dispute pursuant to the requirements of the FLSA, as set forth in this Agreement. The Parties will file a Joint Motion for Final Approval of the Settlement Agreement with the Court no later than 10 days after the close of the Cashing Period referenced below. This Joint Motion shall request the entry of an order of dismissal with prejudice.

2.8. In the event the Court does not grant final approval this Agreement, it will not have any effect, and the Parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

3. **APPOINTMENT OF SETTLEMENT ADMINISTRATOR:** The Parties requested the Court appoint a Settlement Administrator to notify the Plaintiffs of this Agreement, distribute settlement checks, and redistribute any unclaimed funds as set forth herein. The costs of the settlement administration will be equally split with Plaintiffs, on the one side, responsible for half of the total administrative cost and the Defendants responsible for the other half. The cost of the Settlement Administrator will not be charged in any way against the award or payment to the Opt-in Plaintiffs. The Parties have agreed that Rust Consulting should be appointed as the Settlement Administrator and the Court has approved this appointment.

4. **CONSIDERATION**

4.1 In exchange for the full and final release of claims as set forth herein, and subject to more specific terms and conditions described below, Defendants have agreed to make the following payments at the designated times as set forth below provided that: (1) all payments are conditioned upon a Court order approving this Agreement; and, (2) any payments made to any individual member of the Proposed Settlement Collective is conditioned upon the Settlement

Administrator's timely receipt of a completed consent to join as set forth herein (each Plaintiff who timely signs and returns a consent to join form is referred to as an "Opt-in Plaintiff").

  4.2 **Opt-in Plaintiff Settlement Payment:** The Parties have agreed that the settlement payment to each Opt-in Plaintiff will be calculated as $2.50 for each Compensable Hour Worked. Compensable Hour Worked shall mean the Opt-in Plaintiff's documented[1] working hours in one or more designated position(s) (as set forth in Paragraph 2.1) from June 30, 2016 through June 30, 2018. Defendants submit that this Settlement Payment fairly approximates the cost and inconvenience to Defendants if this litigation were to continue, and avoiding both is the sole reason for agreeing to settle these allegations now. Plaintiffs submit that the payment of this amount will fairly compensate Opt-in Plaintiffs for the claims set forth in the Complaint. The settlement payments to the Opt-in Plaintiffs will be allocated as follows:

    4.2.a. Half of the Settlement Payment (i.e. $1.25 for each Compensable Hour Worked) will be classified as back-pay wages and taxed at no more than the 22% federal withholding (the supplemental wage rate) with deductions for any additional applicable state taxes or withholdings. Corresponding IRS W-2 Forms will be issued for such payments.

    4.2.b. The remaining Settlement Payment (i.e. $1.25 for each Compensable Hour Worked) will be designated as liquidated damages and corresponding IRS 1099 Forms will be issued for such payments.

  4.3 **Service Awards:** Defendants have also agreed to pay the Named Plaintiffs a Service Award of $10,000.00 each. Each Named Plaintiff has actively provided information to

---

[1] "Documented working hours" includes all hours recorded and/or paid by Defendants. It is Defendants' obligation to determine the documented working hours in good faith, including the obligation timely and in good faith to investigate any alleged discrepancies raised by Plaintiffs or their counsel.

their attorneys, answered court issued interrogatories and attended both sessions of mediation, which required them to travel, lose wages, and incur other expenses. An IRS 1099 Form will be issued to each Named Plaintiff for such payments. The Service Awards shall be in addition to any Settlement Payment owed to the Named Plaintiffs as an Opt-in Plaintiffs (i.e. $2.50 per hour for any Compensable Hour Worked in a Covered Position).

    4.4    **Attorneys' Fees and Costs:** The Parties further negotiated fair and reasonable attorneys' fees based upon the size of the Proposed Settlement Collective, complexity of the litigation and this settlement. Counsel for the Plaintiffs will be paid $445,000.00 for attorneys' fees and costs. The Parties acknowledge that fees and costs to Plaintiffs' counsel were separately negotiated with the help of the third-party mediator, and only after the amounts to the Plaintiffs were agreed upon. The attorneys' fees provided in this Agreement are less than 25% of the total value that this settlement provides to the Proposed Settlement Collective. Plaintiffs' counsel and the Named Plaintiffs agree that the attorneys' fees and expenses are a fair and reasonable amount and were necessary for the prosecution of this action. Defendants do not oppose Plaintiffs' counsel's recovery of these fees or expenses and do not object to the reasonableness of Plaintiffs' fees and expenses, or that they were fair, reasonable, and necessary for the prosecution of this action. An IRS 1099 Form for the attorneys' fees and costs payment shall be issued *only* to Plaintiffs' counsel.

**5.    NOTICE TO PROPOSED SETTLEMENT COLLECTIVE AND THE OPT-IN PERIOD**

    5.1.    The Parties will endeavor to agree upon a form notice and a consent to join the case that will be sent to the Proposed Settlement Collective. If the Parties cannot agree upon a form notice and consent to join, they will allow the Court to decide any outstanding disputes. Outstanding disputes, if any, will be brought to the Court's attention.

5.2. No later than 14 days after the Court grants preliminary approval of the Settlement, Defendants shall provide Plaintiffs' counsel and the Settlement Administrator with the names and last known addresses of the Proposed Settlement Collective members as defined in Paragraph 2.1. Pursuant to the Settlement Administrator's terms of service to the Parties, the Settlement Administrator shall be tasked with checking the Proposed Settlement Collective names and addresses against the NCOA database prior to mailing and using the most current address for each member of the Proposed Settlement Collective.

5.3. The Settlement Administrator shall also be tasked with sending the notice and consent to join form by first class U.S. Mail, postage pre-paid, with a stamped return envelope addressed to the Settlement Administrator no later than 10 business days from receipt of the Proposed Settlement Collective list, and this will be the exclusive means by which notice is issued. The Opt-in Period will last for 60 days, beginning on the date the notices are sent by the Settlement Administrator. For any undeliverable notice returned to the Settlement Administrator during the Opt-In Period, the Settlement Administrator shall timely take reasonable steps to locate a more current address, including a search of publicly available records, and re-mail the notice to the more current address.

5.4. The notice and consent to join will provide the Opt-In Plaintiffs with the right to submit to the Settlement Administrator written objections to the proposed settlement during the Opt-In Period. The Settlement Administrator shall provide all written objections to the Parties as soon as practicable and the Parties shall provide copies of each objection submitted by an Opt-in Plaintiff within 7 days of the close of the Opt-in Period.

5.5. Pursuant to the Settlement Administrator's terms of service to the Parties, the Settlement Administrator shall also be tasked with providing a formal Status Report every two

weeks beginning 14 days after the notice is mailed and continuing throughout the Opt-In Period. The Status Report shall include, at minimum, the names and relevant information for each Proposed Settlement Collective member person: (1) who has opted in by timely returning a signed consent to join to the Settlement Administrator; (2) whose notice was returned to the Settlement Administrator as undeliverable; and (3) to whom the Settlement Administrator has re-issued notices. At the time of the Status Report, the Settlement Administrator shall also supply Plaintiffs' counsel with the consent to join forms so that counsel may file them with the Court. As part of the settlement administration process, the Settlement Administrator shall also timely provide any information requested by either party about the status of the administration of the settlement upon request of either party, including the information in the Status Report.[2]

      5.6.    Within 7 days of receipt of each Status Report, Defendants shall provide to the Settlement Administrator and Plaintiffs a time clock summary report in an unlocked Microsoft excel or other agreeable format of all clocked time for each Opt-in Plaintiff identified in the Status Report. The time clock summary report will be broken down by bi-weekly hourly totals during the relevant time period. Upon receipt of the time clock summary reports, the Settlement Administrator shall compute the payment owed to each Opt-in and include such calculations in their next bi-weekly Status Report and provide this information to either party upon request.

      5.7.    Within 14 days of the close of the Opt-in Period, the Settlement Administrator shall provide the Parties a final report of identifying all Opt-in Plaintiffs, an accounting of the Compensable Hours Worked for each Opt-in and the calculated settlement amount owed to each Opt-in Plaintiff. Either side may object to the Settlement Administrator's calculations within 5 business days of initially receiving the Settlement Administrator's calculations. Any objections

---

[2] Defendants' obligations to provide hours is only triggered by each formal Status Report provided every two weeks.

that are unresolved shall be submitted to the Court for resolution. Within 5 business days of close of the objection period or the court resolution of any objections, whichever is later, the final accounting of Opt-in Plaintiffs and settlement payouts shall be provided by the Settlement Administrator. Pursuant to the terms of service, the Settlement Administrator will be tasked with establishing a Qualified Settlement Fund Account ("QSFA") upon receipt of the settlement payment accounting and provide Defendants with a funding statement and wiring instructions. Defendants shall fund the QSFA no later than 14 days after receiving the funding statement and wiring instructions from the Settlement Administrator. During that same time period, Plaintiffs' counsel shall provide the Settlement Administrator with wiring instructions and appropriate tax documents needed for the Settlement Administrator to remit payment of the attorneys' fees and costs.

5.8. Within 5 days after the close of the Opt-in Period, Plaintiffs' counsel may provide Defendants with 5 names from the list of the Opt-in Plaintiffs. Defendants shall provide complete time clock and payroll reports, as well as other documents reasonably requested by Plaintiffs' counsel for the five employees selected by Plaintiffs' counsel. These reports shall be provided no later than 14 days after Defendants receipt of the 5 names. The Parties shall act in good faith to resolve any disputes regarding the reported hours, pay, calculations or payouts. Any disputes that the Parties cannot resolve shall be promptly brought to the Court for adjudication.

5.9. The Settlement Administrator will be tasked with wiring $370,000 of the total attorneys' fees and costs to Plaintiffs' counsel no later than 7 days from the date Defendants fund the QSFA. The Settlement Administrator administer shall also be tasked with disbursing the Settlement Payments and Service Awards to the Named and Opt-in Plaintiffs no later than 21 days following Defendants funding the QSFA. Such Settlement Payments and Service Awards checks

shall be mailed by first class U.S. Mail, postage pre-paid. The Settlement Payment checks will state that they are good for 120 days (i.e. the "Cashing Period") from the date the checks were mailed and shall contain the following release language "By cashing this check, I acknowledge that I am ratifying the release of claims against the Defendants as set forth in the Notice of FLSA Settlement." Any Plaintiffs who do not cash their checks during the Cashing Period will not release any claims against Defendants, as otherwise set forth herein, and their claims will be dismissed without prejudice. In addition, the Settlement Administrator will distribute to each Opt-In Plaintiff an IRS Form 1099 showing the amount of liquidated damages and an IRS Form W-2 showing the amount of back-pay wages in the year it was paid. The Settlement Payments will also include a notice stating that any questions regarding their settlement amount should be directed to the Plaintiffs' counsel. During the Cashing Period the Settlement Administrator shall be tasked with providing the Parties with reports every thirty days, or more frequently upon request of either Party, containing: (1) the complete list of checks issued to Plaintiffs; (2) whether the checks have been cashed; (3) any communications from Plaintiffs during the cashing period; (4) all uncashed checks; and, (5) all re-issued checks.

     5.10. Any Opt-in Plaintiff who challenges the accuracy of their settlement amount must do so, in writing to Plaintiffs' counsel and provide the basis for such objection, during the Cashing Period. Defendants will in good faith investigate the objection and provide a response to Plaintiffs' counsel no later than 7 days upon receipt of the written objection. In the event the objection is based upon a challenge to the reported hours worked, the objecting Opt-in must produce any evidence they have to support their claimed hours no later than the close of the Cashing Period. After receipt of such evidence, Defendants shall provide Plaintiffs' counsel complete time and payroll records for such Opt-in(s) and the Settlement Administrator will review the documentation

and recommend whether the hours and payment should be adjusted. Any disputes that cannot be resolved will go before the Court for final determination.  It is the intent of the Parties that identified errors acknowledged by Defendants shall be corrected by Defendants without the need for formal protest or the need for documentation, such as an omission of hours due to a name change or a Plaintiff working in more than one location.  It is also the intent of the Parties that absent such an acknowledged omission by Defendants that additional hours shall not be paid to a Plaintiff without some documentary evidence that Defendants have improperly excluded hours that were recorded in the Defendants' time records during the relevant time period.  That is, the dispute process is not intended to permit a Plaintiff to recover for hours that were not recorded during their employment a/k/a "off the clock" hours.

     5.11.   The Settlement Administrator shall be tasked with re-issuing checks, as requested by Opt-ins or Plaintiffs' counsel, during the Cashing Period and handle any issues regarding the Settlement Payments. No requests for re-issues made after the 120-day Cashing Period will be processed. The Settlement Administrator shall cancel all uncashed checks at the close of the Cashing Period, except for those checks that have been outstanding for less than 30 days. The Settlement Administrator will be tasked with wiring the remaining $75,000 of attorneys' fees and costs to Plaintiffs' counsel no later than 7 days from the close of the Cashing Period.  Within 60 days of the close of the Cashing Period, any remaining funds in the QSFA (other than funds sufficient to cash any checks that are less than 30 days outstanding at the time of the close of the Cashing Period) shall be promptly returned to Defendants. Thirty (30) days after the close of the Cashing Period, any remaining uncashed checks shall be cancelled and the funds promptly returned to Defendants.

5.12. During the Opt-in, the notice and mailings from the Settlement Administrator shall be the only communications directed to the Proposed Settlement Collective. Plaintiffs' counsel shall be permitted to provide notices, consents and other assistance to Proposed Settlement Collective members who request assistance or information from Plaintiffs' counsel. Plaintiffs' counsel shall also be permitted to communicate with Opt-in Plaintiffs, including confirmation letters confirming that their consent to join has been received by the Settlement Administrator or Plaintiffs' counsel. Plaintiffs' counsel may assist Opt-ins in any manner regarding the settlement or their checks. Defendants agree to have no contact with the Proposed Settlement Collective members or Opt-in Plaintiffs related to the Settlement during the Notice Period or Cashing Period and shall direct any inquiries received to the Settlement Administrator or Plaintiffs' counsel. The Parties will jointly agree to a statement that will be provided to Defendants' managers regarding the settlement and any inquiries.

5.13. Defendants shall provide Plaintiffs' counsel the following information for each Opt-in Plaintiff: dates of employment, locations worked (and dates worked at those locations), and telephone number.

## 6. TAXES

6.1. It is each Plaintiffs' ultimate obligation to pay his or her employee's share of appropriate federal, state, and local income taxes on all payments that lawfully qualify as income. The Parties also agree that there must be proper withholding of federal, state, and local income taxes, and the employees' share of FICA and Medicare on all settlement payments representing back-pay wages. Defendants shall be responsible for calculating, withholding, and depositing or remitting the required amounts for federal, state, and local income taxes on all payments representing back-pay wages, and the employees' share of FICA and Medicare.

6.2. Defendants shall be responsible for calculating and paying all applicable FUTA, SUTA, and the employer's share of FICA and Medicare on all payments representing back-pay wages, and will remit those payments to the appropriate taxing authorities.

7. **RELEASE:** Upon the Court's **final** approval of this Agreement and entry of the Order of Dismissal and payment by Defendants of all monetary amounts due under this Agreement to the Settlement Administrator, the Opt-in Plaintiffs shall voluntarily and fully release all Defendants named in the above-captioned action by and between and their former, present or future parents, subsidiaries, officers, directors, employees, shareholders, attorneys and administrators, and the predecessors and successors, assigns, and legal representatives or all such entities and individuals (the "Releasees") from all known and unknown wage and compensation claims **arising on or before June 30, 2018 and** pled in the operative Complaint including but not limited to those arising under local, state or federal law (the Fair Labor Standards Act, 29 U.S.C. §201 et seq., and all of the implementing regulations) relating to their employment with the Releasees. **This release is intended to release only wage and hour claims that arise from the facts pled in the Complaint and does not include the release of any federal or state claims including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., any state whistleblower laws, or any state common law such as breach of contract or quantum meruit claims based on facts other than those alleged in the Complaint.** Upon the Court's **final** approval of this Agreement and entry of the Order of Dismissal and payment by Defendants of all monetary amounts due under this Agreement to the Settlement Administrator, Named Plaintiffs shall voluntarily and fully release all known and unknown claims relating to their employment with the Defendants or the Releasees.

**8.     DISMISSAL OF ACTION:** Upon satisfaction of the conditions specified herein including the payment of all back pay, liquidated damages, attorneys' fees and costs as set forth herein, and upon final approval of this settlement by the Court as fair, reasonable, and adequate, the Plaintiffs agree to the dismissal of this action with prejudice.

**9.     RESOLUTION OF FUTURE DISPUTES:** The United States District Court for the Southern District of Alabama will have continuing jurisdiction to interpret and enforce this Agreement and to hear and adjudicate any dispute or litigation arising from the Agreement.

**10.    PARTIES' AUTHORITY**

10.1.   The Named Plaintiffs, on behalf of themselves and the Opt-in Plaintiffs, and Defendants hereby represent that they are fully authorized to enter into this Agreement.

10.2.   The Parties acknowledge that throughout the settlement negotiations that resulted in this Agreement they have been represented by counsel who are experienced in collective action litigation under the FLSA, and that this Agreement is made with the consent and advice of counsel who have prepared the Agreement.

**11.    MUTUAL FULL COOPERATION:** The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

**12.    ENFORCEMENT ACTIONS:** In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or Parties to enforce the provisions of this Agreement, the successful party or Parties shall be entitled to recover from the unsuccessful party or Parties' reasonable attorneys' fees and costs, including any expert witness fees if reasonable.

13. **ENTIRE AGREEMENT:** This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the Parties intend that this Agreement shall be controlling.

14. **VOIDING THE AGREEMENT:** In the event this Agreement, or any amended version agreed upon by the Parties does not obtain final judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

15. **COUNTERPARTS:** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties execute this Settlement Agreement on the dates indicated below:

**FOR THE PLAINTIFFS:**

_____    _____
Bryan Mygrant                     Date


_____    _____
Jonathan Webber                   Date

**FOR THE DEFENDANTS:**

_____    _____
Gulf Coast Restaurant Group, Inc.,    Date
Half Shell Oyster House, Inc., and Robert
Taylor d/b/a Half Shell Oyster House

*[The rest of this page left intentionally blank]*